**Affirm in part; Reverse and Render in part; Opinion Filed September 17, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00267-CV**

**METROPLEX MAILING SERVICES, LLC. AND JESSE R. MARION, Appellants**

**V.**

**RR DONNELLEY & SONS COMPANY, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 09-00845**

## OPINION

Before Justices Lang, Myers, and Evans
Opinion by Justice Evans

In this appeal following a jury trial, Metroplex Mailing Services, LLC. and Jesse R. Marion bring three issues challenging the trial court's judgment in favor of RR Donnelley & Sons Company. Metroplex and Marion first contend the evidence is legally insufficient to support the jury's finding that Metroplex breached the mail processing agreement made the subject of the suit. In their second issue, they contend the trial court erred in rendering judgment against Marion individually for Metroplex's alleged breach. Finally, in their third issue, they contend the evidence is legally and factually insufficient to support the trial court's award of attorney's fees which they argue was excessive and disproportionate to the actual damages awarded. After reviewing the record and arguments on appeal, we affirm the trial court's judgment against Metroplex as well as the award of attorney's fees. We reverse the trial court's judgment against Marion individually, however, because we conclude there is no evidence to

support piercing the corporate veil. Accordingly, we render judgment that Donnelley take nothing by its claims against Marion.

## FACTUAL BACKGROUND

Metroplex is a presort mailing company based in Dallas, Texas. The company was formed by Marion as a single-member limited liability company with Marion serving as president and CEO. In May 2008, Metroplex entered into a mail processing agreement with Bowne & Co.[1] under which Metroplex would sort mail for Bowne's Dallas facility customers. In return Bowne agreed to pay Metroplex a minimum of $50,000 per month regardless of the volume of mail Bowne provided for sorting.

The agreement between Metroplex and Bowne was initially for a five-year term. The agreement could be terminated by Bowne immediately, however, if Metroplex failed to "perform against agreed upon SLA's [service level agreements]" or had "other service/delivery/or noncompliance issues" that resulted in failures to perform between Bowne and its clients. Bowne could also terminate the agreement if Metroplex failed to achieve a "3 digit [sort] rate on 92% of the mail on a consistent basis." A "consistent basis" was defined as an average of more than three months.

The agreement also required Bowne to keep a certain amount of money on deposit with Metroplex. The amount would be determined by Metroplex alone. Following expiration or termination of the agreement, Metroplex was required to return the deposit to Bowne less any amounts still owed for services and postage. During the initial two months of the contract term, Bowne placed $2,100,000 on deposit with Metroplex.

Because the contract with Bowne was expected to significantly increase the amount of mail Metroplex would need to process on a monthly basis, Metroplex entered into a separate

---

[1] Donnelley acquired Bowne in 2010 and subsequently replaced Bowne as a party to this suit.

agreement with an affiliate of Bowne's to purchase additional mail sorting equipment for $1 million. Metroplex was unable to obtain financing for the purchase, and instead Marion took out a personal loan for $750,000 using the sorting equipment as security. The security agreement between Marion and the bank stated that "all proceeds from any disposition of the collateral [would] be held in trust for [the bank]" and that Marion would deliver the sale proceeds to the bank upon receipt. Marion then added $250,000 of his own money to purchase the equipment and leased the machines to Metroplex for a three-year term.

At the time Metroplex and Bowne entered into the sorting agreement, Columbia House was one of Bowne's major customers. In the fall of 2008, however, Bowne and Columbia House terminated their relationship. Bowne was struggling financially and suffered a net loss during the course of the year of over $30 million. The volume of mail Bowne provided Metroplex for sorting declined substantially from roughly 10,000,000 pieces per month to less than 3,000,000 pieces per month.

By September 2008, Metroplex was no longer using one of the pieces of equipment purchased with the loan proceeds. Marion sold the equipment to a third party and the third party wired its payment to Metroplex's operating account. Metroplex then used the sale proceeds to make a payment to the bank to reduce the principal on Marion's personal loan as required by the security agreement.

In October 2008, Bowne decided that a substantial portion of the money it had on deposit with Metroplex had not been properly segregated to be applied to postage and it requested a refund of $586,000 from the remaining $700,000 balance. Bowne acknowledged that it did not have a right to a refund under the terms of the agreement because the contract had neither expired nor been terminated. But Bowne decided that nothing in the contract prevented it from requesting a refund. In response, Metroplex voluntarily returned $200,000 of the deposit.

–3–

On January 13, 2009, Bowne notified Metroplex that it would not pay any further invoices until it received the remaining $386,000 of its requested refund. Less than two weeks later, Metroplex informed Bowne that it was ceasing operations. Bowne again requested return of its deposit and was told the funds were not available. Accordingly, on January 23, 2009, a lawyer representing Bowne sent Metroplex a letter stating that Bowne was terminating the mail processing agreement effective immediately.

On the same day the termination letter was sent, Bowne filed suit against Metroplex seeking the return of the money it had on deposit. Bowne asserted claims for breach of contract, conversion, unjust enrichment, and replevin. Bowne later added various tort claims and added Marion, individually, as a defendant. Metroplex asserted counterclaims for breach of contract, common law fraud, fraud in the inducement, quantum meruit, and promissory estoppel. Eight months before trial, RR Donnelley & Sons Company appeared as the new plaintiff in the suit pleading that it was the successor in interest to Bowne.

In September 2011, the case was tried before a jury. After hearing the evidence, the jury found that Metroplex failed to comply with the mail processing agreement and Bowne did not fail to comply with the agreement. The jury further found that Marion was responsible for the conduct of Metroplex. After various post-trial proceedings, the trial court signed a final judgment ordering that Donnelley recover $40,391.28 in actual damages and $538,358.32 in attorney's fees from both Metroplex and Marion. It was ordered that all parties take nothing by their other claims. Metroplex and Marion now bring this appeal.

## ANALYSIS

### I. BREACH OF CONTRACT

In their first issue on appeal, Metroplex and Marion contend the evidence is legally insufficient to support the trial court's judgment against Metroplex for breach of contract. When

reviewing a legal sufficiency challenge, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *See Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App.—Dallas 2010, no pet.). We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id*. If there is any evidence of probative force to support the jury's finding, the legal sufficiency challenge fails. *See Pierre v. Steinbach*, 378 S.W.3d 529, 533 (Tex. App.—Dallas 2012, no pet.)

In the trial court's charge to the jury in this case, the jury was asked whether Metroplex failed to comply with the mail processing agreement. Metroplex contends there is no evidence to support the jury's answer of "yes" to this question. One of the breaches alleged by Donnelley was that Metroplex failed to meet its contractual obligation to sort a minimum of 92% of Bowne's mail by at least the first three digits of the mailing address zip code on a consistent basis. The agreement defined a "consistent basis" as an average of more than three months.

At trial, Donnelley called one of its senior managers, Michael Neece, as a witness who stated that Metroplex did not achieve the minimum sort rate required by the contract. Neece was an accountant employed by Bowne during the time Metroplex was processing mail for Bowne. In support of his testimony, Neece presented a chart showing the quantity of mail Bowne supplied to Metroplex and how the mail was sorted in the months of August, September, and October of 2008. The chart showed that the percentage of mail Metroplex sorted by three or more digits of the mailing address zip code was 71.851% in August, 75.389% in September, and 77.1% in October. In addition, Neece testified that Metroplex failed to meet the 92% rate in July and had a sort rate of only 71% for that month.[2] Metroplex contends Neece's testimony is insufficient to show that it breached the agreement because his statement about the July sort rate

---

[2] Metroplex contends Neece's statement that he "looked at July" should not be considered because the trial court sustained Metroplex's objection that the statement was unresponsive to the question asked. The same testimony came in later without objection.

is unsupported *ipse dixit* and, therefore, there was no evidence that Metroplex failed to meet the sort rate required by the contract for *more than* three months.

*Ipse dixit* is a term applied to expert testimony that is not linked to underlying facts. *See Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999). In this case, Neece testified as a witness with knowledge of the fact that Metroplex's July sort rate was 71%. The fact that Neece did not put his calculation of the July sort rate on the chart shown to the jury does not render his testimony about that month *ipse dixit* or conclusory.

Metroplex also contends that Neece's testimony is legally insufficient because his calculations addressed only the sort rate for first class mail and failed to take into account Metroplex's sort rate for the standard mail such as Columbia House. Neece testified he could not calculate the sort rate for the Columbia House mail because Metroplex did not provide it with postage reports showing how that mail had been sorted. Neece further stated, however, that adding the Columbia House work to the sort rate calculations would have no substantial effect. Neece explained that Metroplex's sort rate for first class mail was so low that, even if Metroplex had sorted 100% of the Columbia House mail by three or more digits, the sort rate would not rise above 92%. Although Metroplex disputes the accuracy of this statement, it cross-examined Neece about his calculations and the jury was free to determine the weight to be given to Neece's testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (jury is sole judge of credibility of witnesses and weight to be given to testimony).

Finally, as part of its evidence at trial, Donnelley presented a videotape clip from Marion's deposition in which Marion conceded that Metroplex did not meet the 92% sort rate required by the mail processing agreement. When questioned at trial about whether Metroplex had ever met the required sort rate, Marion testified only that he was told they had met the rate in June 2008. From this testimony, the jury could have reasonably inferred that Metroplex did not

meet the 92% sort rate in July, August, September, and October—the months on which the parties' dispute focused. Based on the foregoing, we conclude the evidence is legally sufficient to support the jury's finding that Metroplex failed to comply with the mail processing agreement because it failed to achieve a 92% sort rate for an average of more than three months. We resolve Metroplex's and Marion's first issue against them.

## II. PIERCING THE CORPORATE VEIL

In their second issue, Metroplex and Marion contend the trial court erred in rendering judgment against Marion individually because Marion cannot be held personally liable for Metroplex's obligations. Donnelley responds that that there is "ample evidence" supporting the jury's finding that Marion was responsible for the conduct of Metroplex, allowing the court to "pierce the corporate veil." After examining the record on appeal, we conclude Donnelley produced no evidence that Marion operated Metroplex in a manner that would allow the trial court to render judgment against him individually in this case.

Metroplex is a limited liability company of which Marion is the sole member. The legislature specifically authorized single-member limited liability companies in section 101.101(a) of the Texas Business Organizations Code. TEX. BUS. ORGS. CODE ANN. § 101.101(a) (West 2012). Under the code, a member or manager of a limited liability company is not liable for the company's debts, obligations, or liabilities under a judgment, decree, or order of a court except to the extent the company agreement specifically provides otherwise. *See Id*. § 101.104 & .114; *see also id*. § 101.113. The statutory protections afforded to members and managers of an LLC give way only when a plaintiff can show that the LLC was used for the purpose of perpetrating, and did perpetrate, an actual fraud for the member or manger's direct personal benefit. *See Shook v. Walden*, 368 S.W.3d 604, 621 (Tex. App.—Austin 2012, pet. denied) (policies governing piercing veil of corporation also apply to limited liability

–7–

companies). Under those circumstances, the court may pierce the corporate veil and hold the member or manager personally liable. *Id.*

To pierce the veil, it is not enough to show that the LLC was an alter-ego or a "sham" company. *Id.* Evidence that a company was used as an alter ego does not, by itself create an issue regarding whether it was used to commit an actual fraud on the plaintiff for the defendant's personal benefit. *See Shaw v. Maddox*, 73 S.W.3d 472, 481 (Tex. App.—Dallas 2002, no pet.). To recover against a member of an LLC individually, the plaintiff must show dishonesty of purpose or intent to deceive. *See Menetti v. Chavers*, 974 S.W.2d 168, 174 (Tex. App.—San Antonio 1998, no pet.).

Donnelley points to three actions by Marion that it argues demonstrate the type of dishonesty encompassed by the concept of actual fraud. First, Donnelley points to Marion's use of the money wired to Metroplex from the sale of the sorting machine to pay off a portion of his personal loan. Although Donnelley characterizes this transaction as a fraudulent diversion of corporate assets for personal benefit, the evidence adduced at trial shows there was nothing dishonest about the use of the sale proceeds. It is undisputed that Marion took out a personal loan of $750,000 to purchase sorting equipment to be used by Metroplex. It is also undisputed that the sorting equipment was used as security for the loan and the security agreement required all proceeds from any sale of the equipment to be used first to pay off the loan. Finally, it is undisputed that Marion sold one of the pieces of equipment after Metroplex no longer had a use for it. Marion then applied the proceeds to reduce the balance of the loan as required by the security agreement. Marion's creation and use of a single-member limited liability company, as statutorily authorized by the legislature, combined with an ordinary personal loan to purchase equipment for the company's use secured by that equipment, amounts to no evidence of a fraud even in combination with the other facts of this case.

Donnelley relies on the fact that the bill of sale for the purchase of the sorting equipment shows Metroplex as the purchaser rather than Marion. Based on this, Donnelley argues that Marion sold equipment owned by Metroplex to satisfy his personal debts. Donnelley presented no evidence, however, that Marion ever concealed the fact that the equipment was purchased with money from a personal loan and that the equipment was used as security for the loan. Nor is there any evidence that Marion represented that the equipment would be a gift to Metroplex. The evidence in fact contains a lease agreement between Marion and Metroplex for Metroplex's use of the machinery. The bill of sale showing Metroplex as the purchaser of the equipment, at most, might be some evidence that Marion treated the company as his alter ego. It does not, however, show that Marion committed a fraud on Bowne or Donnelley.

Second, Donnelley contends that Metroplex used some of Bowne's postage deposit as operating funds in violation of the agreement and without disclosing this fact to Bowne. Even assuming the evidence shows this was the case, there is no evidence that this action resulted in any direct personal benefit to Marion. Donnelley speculates that the use of Bowne's deposit as operating funds "obviated the need for Marion to contribute additional capital and/or take on additional personal debt to keep Metroplex afloat." But Donnelley cites no evidence to support this contention. Indeed, the evidence shows that Metroplex's company agreement with Marion did not require him to contribute any capital other than his original contribution. Nor was he required to take on any personal debt. Because there is no evidence to show that the alleged misuse of the postage deposit resulted in any direct benefit to Marion, it cannot be used as the basis for holding him personally liable for the company's debts.

Finally, Donnelley argues Marion committed an act of fraud by shutting down Metroplex's operations in the face of Bowne's demand for the return of its deposit. The evidence does not show, however, that Marion closed the company to avoid returning a deposit

that Donnelley concedes Metroplex had no obligation to return at the time of Bowne's demand. All the evidence shows that Metroplex ceased operations because of declining business. To the extent Donnelley suggests Marion fraudulently placed some of Metroplex's assets out of the reach of its post-closing creditors by pledging them as security for his personal loan, the evidence conclusively shows that Marion's personal loan was obtained to purchase those assets for Metroplex's use. As stated above, there is nothing in the record to suggest the assets were gifted to the company by Marion or that the transaction was concealed in any way. Furthermore, as with the alleged misuse of the deposit money, Donnelley presented no evidence that Marion obtained any direct personal benefit from the closing of the company as required to pierce the corporate veil.

On these facts, we conclude there is no evidence in the record to show that Marion used Metroplex to perpetrate an actual fraud for his direct personal benefit. Accordingly, we conclude the trial court erred in rendering judgment against Marion individually. We resolve Metroplex's and Marion's second issue in their favor.

### III. ATTORNEY'S FEES

In their final issue on appeal, Metroplex and Marion contend the evidence is legally and factually insufficient to support the award of attorney's fees to Donnelley. As stated earlier, if there is any evidence of probative force to support the jury's finding, the legal sufficiency challenge fails. *See Pierre*, 378 S.W.3d at 533. To determine whether the evidence is factually sufficient to support a finding, an appellate court considers and weighs all evidence that was before the trial court. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See id*. As the reviewing

–10–

court, we may not act as fact finder and may not pass judgment on the credibility of witnesses or substitute our judgment for that of the trier of fact. *Golden Eagle Archery,* 116 S.W.3d at 761.

The charge of the court in this case asked the jury to find the "reasonable fee for the necessary services of Donnelley's attorneys" at each stage of the litigation. The jury found that Donnelley incurred $571,401.50 in reasonable and necessary attorney's fees for "preparation and representation in the trial court." The trial court deducted out-of-pocket expenses and the fees charged for paralegal services from this amount and ultimately awarded Donnelley $538,358.32 in fees. Metroplex and Marion challenge the sufficiency of the evidence to support several aspects of the award focusing largely on the language of the attorney's fees question in the jury charge. We conclude these challenges construe the question in a manner not supported by the language of the charge as a whole.

Metroplex and Marion first contend that the amount of fees awarded to Donnelley improperly includes $228,055 in fees incurred by Bowne. They argue that, because the jury was asked to award fees only for the necessary services of "Donnelley's attorney's," the services of Bowne's attorneys cannot be included. This argument is not well taken.

The charge instructed the jury that "Donnelley is the successor in interest to Bowne and stands in the legal place of Bowne for the purposes of this lawsuit." Although the charge also defines Donnelley and Bowne as distinct entities, this does not change the fact Donnelley "stands in the legal place of Bowne" as the plaintiff in this litigation. All legal work performed on behalf of Bowne was also performed on behalf of Donnelley and all rights of recovery that Bowne had when it brought the lawsuit, including the right to recover attorney's fees, belong to Donnelley. Bowne's attorneys, therefore, were Donnelley's attorneys for purposes of the lawsuit and the judgment properly included the fees incurred by Bowne in the award to Donnelley.

–11–

Metroplex and Marion further argue that the amount of fees awarded to Donnelley improperly includes fees the company incurred while seeking a writ of mandamus. Because the mandamus necessarily involved legal work in the appellate courts, Metroplex and Marion argue these fees cannot be included in the jury's award of fees for "preparation and representation in the trial court." Donnelley responds that the mandamus work may be included in the award because it formed a necessary part of the pursuit of initial relief on the merits in the trial court and its purpose was "to enable the trial court proceedings to go forward." We agree.

The charge does not define the scope of work encompassed by "preparation and representation in the trial court." The other stages of litigation for which the jury could have awarded fees were for representation through "appeal to the Court of Appeals," "petition for review stage in the Supreme Court of Texas," "the merits briefing stage in the Supreme Court of Texas," and "oral argument and the completion of proceedings in the Supreme Court of Texas." The pursuit of mandamus relief necessarily preceded the conclusion of the trial court proceedings and this appeal. Accordingly, the jury could reasonably have concluded that the mandamus work fell within the scope of "preparation and representation in the trial court."

Metroplex and Marion next contend the evidence is legally and factually insufficient to support $100,847.82 of the attorney's fees awarded because the evidence submitted as to that portion of the award was conclusory. The $100,847.82 amount represents the amount of fees Donnelley claimed it incurred in August 2011, the month immediately preceding trial of the case in September. Although Donnelley submitted itemized invoices for the fees it incurred through July 31, 2011, the evidence presented to support the fees incurred during the month of August consisted solely of the testimony of its attorney, Cody Towns.

Towns testified at trial regarding his background and experience practicing law in Dallas and his familiarity with reasonable and necessary fees charged in cases similar to the one at

–12–

issue.  Towns further testified regarding the complexity of the case.  Towns then stated that he had examined the invoices through the end of August and the total amount of reasonable and necessary fees was $571,401.50.   Relying on the Texas Supreme Court's opinion in *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012), Metroplex and Marion contend that, to the extent Towns's testimony included fees incurred in August 2011, there was no supporting documentation and, therefore, the evidence is insufficient to support an award of fees beyond what was shown in the invoices through July.

In *El Apple*, the supreme court addressed the evidence necessary to support an award of attorney's fees under the federal lodestar method of awarding fees for claims under the Texas Commission on Human Rights Act.  *Id*. at 760 ("Because federal courts use the lodestar method in awarding attorney's fees in Title VII cases, Texas courts have likewise used lodestar in awarding fees under Section 21.259(a) of the TCHRA.").   The court opined that, under the federal lodestar method, a claimant must produce evidence of who performed the legal services, when the services were performed, and the amount of time spent on various parts of the case.  *Id*. at 763.  The court distinguished the lodestar approach from a traditional award of attorney's fees noting that, "[w]hile Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees, the requirement has merit in contested cases under the lodestar approach."  *Id*. at 762.  Nowhere in *El Apple* did the court conclude that all attorney's fees recoveries in Texas would thereafter be governed by the lodestar approach and we do not draw that conclusion here.

Courts addressing the sufficiency of the evidence to support attorney's fees awards since *El Apple* have held that the opinion has no bearing on non-lodestar awards of fees such as those made in breach of contract cases.  *See Concert Health Plan, Inc. v. Houston Northwest Partners, Ltd.*, No. 14-12-00457-CV, 2013 WL 2382960, at *9 n.17 (Tex. App.—Houston [14th Dist.]

–13–

2013, no pet.); *Circle Ridge Prod., Inc. v. Kittrell Family Minerals, LLC*, No. 06-13-00009-CV, 2013 WL 3781367, at *7 (Tex. App.—Texarkana 2013, pet. filed). Under the traditional method of awarding fees, documentary evidence is not a prerequisite. *See In re A.B.P.*, 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, no pet.). It has consistently been held that an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award. *Id.* Accordingly, we conclude the evidence is legally and factually sufficient to support the portion of the fee award attributable to the legal services provided to Donnelley in August 2011.

Metroplex and Marion challenge the entire attorney's fees award as being excessive and ask this Court to suggest a remittitur. The standard of review for remitting excessive damages, including excessive attorney's fees, is factual sufficiency. *See Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986). We remit only if some portion of the award is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* at 624. The reasonableness of attorney's fees is a question of fact for the jury's determination and we may not substitute our judgment for the jury's. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

Metroplex and Marion do not challenge the evidence supporting the award *per se* in their request for remittitur, but argue only that the award of attorney's fees is disproportionate to award of damages. While attorney's fees should bear some reasonable relationship to the amount in controversy, there is no rule that fees cannot be more than the actual damages awarded. *See Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 441 (Tex. App.—Dallas 2011, pet. denied). Indeed, the amount awarded for attorney's fees can greatly exceed the amount of damages recovered. *See, e.g., Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 209–10 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In this

case, the legal issues involved claims and counterclaims with damages sought totaling more than $3 million. Donnelley submitted detailed invoices itemizing the majority of the work performed and there is no evidence that the rate charged by Donnelley's attorneys was unreasonable. Based on the record before us, we conclude the evidence is factually sufficient to support the award and we decline to suggest a remittitur.

Finally, Metroplex and Marion contend a new trial on attorney's fees is required because Donnelley failed to segregate the fees it incurred for pursuing its breach of contract claim from the fees it incurred for pursuing its other claims for which fees were not recoverable. The charge in this case did not ask the jury to segregate the fees among the various claims asserted and Metroplex and Marion did not object to the charge. A failure to specifically object to the charge's failure to segregate attorney's fees among the claims asserted waives any complaint on appeal regarding the failure to segregate. *See Dick's Last Resort of West End, Inc. v. Market/Ross, Ltd.*, 273 S.W.3d 905, 919 (Tex. App.—Dallas 2008, pet. denied); *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 797 (Tex. App.—Dallas 2007, no pet.).

Metroplex and Marion contend they had no opportunity to object because the jury charge contained no questions regarding attorney's fees at the time of the charge conference. The fees questions were added later, after both sides concluded their closing arguments. At the time the questions on fees were submitted to the jury, however, the trial court asked counsel if the parties agreed to the supplemental instructions and all counsel answered "yes." Additionally, after the attorney's fees instructions were read to the jury, the trial court asked counsel if any additional instructions were necessary and all counsel answered "no." Metroplex and Marion had ample opportunity, therefore, to raise any issues of segregation of fees before the charge was submitted to the jury for deliberations.

Metroplex and Marion suggest that any objection to the charge would have been "an exercise in futility" because the testimony on attorney's fees presented by Donnelley did not segregate the fees among the claims and "there was nothing the trial court could have done to correct Donnelley's deficient and unsegregated evidence." But they cite no authority for the proposition that an alleged deficiency in the opposing party's evidence on fees somehow obviates the need to request a proper jury instruction to preserve the issue.[3]

In the alternative, Metroplex and Marion contend they preserved their objection to Donnelley's failure to segregate by raising it in their motion for judgment notwithstanding the verdict. Even assuming this objection was timely, an examination of the motion shows that Metroplex and Marion did not raise any challenge to the jury charge, but only Donnelley's failure to segregate its fees in the evidence presented to the jury. Because Metroplex and Marion did not object to the charge's failure to request the jury to segregate the attorney's fees among the various claims, they have waived their complaint that the fees were not segregated. We resolve Metroplex and Marion's third issue against them.

## CONCLUSION

Based on the foregoing, we conclude Donnelley presented legally sufficient evidence to support the jury's finding of breach of contract against Metroplex and legally and factually sufficient evidence to support the award of attorney's fees. We further conclude, however, that there is no evidence to support piercing the corporate veil and holding Marion personally liable. Accordingly, we reverse the trial court's judgment to the extent it orders recovery against Marion

---

[3] We note that Metroplex and Marion agreed that the parties' presentation of evidence on attorney's fees would be made without objection or cross-examination.

individually and render judgment that Donnelly take nothing by its claims against him.

We affirm the trial court's judgment in all other respects.

120267F.P05


/David Evans/
DAVID EVANS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

METROPLEX MAILING SERVICES,
LLC. and JESSE R. MARION, Appellants

No. 05-12-00267-CV     V.

RR DONNELLEY & SONS COMPANY,
Appellee

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 09-00845.
Opinion delivered by Justice Evans.
Justices Lang and Myers participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment ordering that RR Donnelley & Sons Company recover from Jesse R. Marion individually and **RENDER** judgment that RR Donnelley & Sons Company take nothing by its claims against Jesse R. Marion. In all other respects, the trial court's judgment is **AFFIRMED**.

     It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 17th day of September, 2013.

/David Evans/
_____
DAVID EVANS
JUSTICE