**Affirmed and Opinion Filed December 29, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01036-CV

## HEJIN HONG, Appellant
## V.
## NATIONS RENOVATIONS, LLC, Appellee

On Appeal from the County Court at Law No. 4
Dallas County, Texas
Trial Court Cause No. CC-14-00212-D

### MEMORANDUM OPINION
Before Justices Francis, Lang, and Stoddart
Opinion by Justice Stoddart

This is an appeal from a final judgment following a jury trial in a suit to recover for breach of a construction contract and quantum meruit. After fire damaged a rental house owned by appellant Hejin Hong, she contracted with Nations Renovations, LLC to repair the house. Nations alleged it performed significant additional work outside the scope of the construction contract. When Hong failed to pay the balance due on the contract and for the additional work, Nations sued her for breach of contract, quantum meruit, and other theories. The jury found Hong breached the contract, Nations performed additional work outside the scope of the contract for which it was not paid, and failed to find that Nations breached the construction contract. The jury found damages for breach of contract and quantum meruit, and attorney's fees. The trial court rendered judgment on those findings.

Hong raises six issues on appeal, arguing: the trial court erred by (1) rendering judgment on quantum meruit when the parties had a written contract; (2) granting a directed verdict on her counterclaim for DTPA[1] violations, fraudulent inducement, and fraud; (3) refusing to submit jury questions and instructions on those claims; (4) rendering judgment for Nations for attorney's fees, interest, and costs, where Nations was not a prevailing party and did not segregate its attorney's fees evidence; and that (5) the amount of attorney's fees awarded through trial was excessive; and (6) the evidence was factually insufficient to support the several of the jury's findings. As explained below, we reject these issues and affirm the trial court's judgment.

## BACKGROUND

On September 27, 2012, a rental house owned by Hong was damaged by fire. Hong received offers from several contractors including Nations. On October 19, 2012, Hong signed a contract with Nations for repairs to the house (the Contract). The Contract provided that Nations would do the repairs at a price agreeable to Hong's insurance company and Nations with no additional cost to Hong except her deductible. At Hong's request, four items were handwritten on the Contract under the heading "Recommendations and Notes."

After work began, Nations's owner, Michael Cass, discovered that Hong's insurance policy covered only the actual cost value of the property at the time of the loss instead of the replacement cost of property. As a result, Nations could not agree with the insurance company to replace damaged property with new property. Except for the roof and certain items approved by insurance, Nations repaired the damaged property or replaced it with used items. During the repairs, Nations discovered other items damaged by the fire and submitted a supplemental claim to the insurance company, which was approved.

---

[1] TEX. BUS. & COM. CODE ANN. § 17.41–.63, known as the Deceptive Trade Practices-Consumer Protection Act. ("DTPA").

When the work was nearing completion, Cass and Hong discussed additional upgrades and repairs including the items listed in the Recommendations and Notes section of the Contract (the Extra Work). Cass explained he could not do the Extra Work under the Contract because the insurance policy did not cover replacement value for upgrades or items not damaged by the fire. Cass told her it would cost over $15,000 to do the Extra Work, but he would do it for as close to $15,000 as possible. Hong denied discussing the Extra Work with Cass and said the work was always included within the scope of the Contract.

Nations completed the original work under the insurance estimate. After inspection, Hong's mortgage company released the final insurance payment for that work. Nations also completed the work under the supplemental insurance claim as well as the Extra Work. Nations did the Extra Work for a total of $15,462.54. The city inspected the work during the repairs and ultimately issued a certificate of occupancy.

The insurance company paid Hong $8,584.49 for the supplemental insurance claim, which did not include her $1,000 deductible. When Nations requested the supplemental insurance payment plus Hong's deductible, she refused to pay and complained of several defects in the work and delay in completing the project. Nations also requested payment for the Extra Work, but Hong refused.

Nations continued to pursue its demands for payment. Hong's husband, Wei Wei, a patent attorney, responded in writing claiming Nations was liable to Hong for material breach of the Contract, damages for delay and consequential losses, and DTPA violations. Nations then filed suit against Hong and her husband for breach of the Contract, quantum meruit for the Extra Work, and other claims. On its contract claim, Nations sought to recover the supplemental insurance payment plus the replacement cost value of the work. After the suit was filed, Hong voluntarily paid Nations $2,500 from the supplemental insurance claim.

–3–

Hong and Wei defended the suit, raising affirmative defenses and filing several motions for summary judgment. Hong filed a counterclaim for breach of the Contract, DTPA violations, fraudulent inducement, and fraud. The trial court granted partial summary judgment denying Nations's argument for replacement cost value and its claims against Wei, resulting in his dismissal from the suit. The case then proceeded to trial.

At the close of evidence, Nations moved for directed verdict on Hong's DTPA, fraudulent inducement, and fraud claims based on a disclaimer of reliance in the Contract. The trial court granted the motion. The trial court submitted Nations's breach of contract claim and claims for the Extra Work, as well as Hong's counterclaim for breach of contract, to the jury. The jury charge included an instruction regarding segregating attorney's fees.

The jury found Hong breached the Contract, Nations' damages for that breach were $7,084.49, Nations performed compensable work for which it was not paid, and damages for quantum meruit in the amount of $15,462.54. Additionally, the jury found that Nations's reasonable and necessary attorney's fees through trial were $61,400.00 and that Nations did not breach the Contract.

The trial court rendered judgment for Nations against Hong in the amount of $22,547.03 (the total of the breach of contract and quantum meruit damages found by the jury), attorney's fees through trial in the amount of $61,400.00, conditional attorney's fees for appeals as found by the jury, pre- and post-judgment interest, and court costs.

### STANDARD OF REVIEW

To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and will set aside the verdict only if the evidence supporting the jury finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, No. 15-0049, 2016 WL 3483165, at *24

–4–

(Tex. June 24, 2016); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). "[T]he jury is the sole judge of the credibility of witnesses and the weight to be given their testimony." *Golden Eagle Archery, Inc., v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). It is up to the jury "to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses." *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952).

A directed verdict is warranted when the evidence is such that no other verdict can be reached and the moving party is entitled to judgment as a matter of law. *See Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 645 (Tex. App.–Dallas 2015, no pet.). A directed verdict for a defendant is proper: (1) when the plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; (2) if the plaintiff either admits or the evidence conclusively establishes a defense to the plaintiff's cause of action; or (3) a legal principle precludes recovery. *See Prudential Ins. v. Fin. Review Servs.*, 29 S.W.3d 74, 77 (Tex. 2000); *Cooper v. Campbell*, No. 05-15-00340-CV, 2016 WL 4487924, at *4 (Tex. App.—Dallas Aug. 24, 2016, no. pet. h.) (mem. op.); *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 396 (Tex. App.–Houston [1st Dist.] 2011, pet. denied) (noting directed verdict proper when legal principle precludes recovery).

**ANALYSIS**

## A. Quantum Meruit and Written Contract

In her first issue, Hong argues the trial court erred by rendering judgment for quantum meruit because the parties entered into a written contract.

Quantum meruit is an equitable remedy based on an implied contract to pay for benefits received. *See Shamoun & Norman, LLP v. Hill*, 483 S.W.3d 767, 781 (Tex. App.—Dallas 2016, pet. pending). A contract is implied where the parties failed to form one, but equity requires

payment for beneficial services rendered and knowingly accepted. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). Thus, "[a] party generally cannot recover under *quantum meruit* where there is a valid contract covering the services or materials furnished." *Id*. However, quantum meruit does not preclude recovery for the reasonable value of work performed if the work is not covered by a contract. *See Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) (party "will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials"); *Shamoun & Norman*, 483 S.W.3d at 781. The court decides the legal question of whether an express contract covers the services at issue. *Shamoun & Norman*, 483 S.W.3d at 781. We review this question de novo, and determine whether the work was required by the contract and whether the contract made provision for the type of extra work performed. *Id.*

Construction of a written contract is a question of law for the trial court. *MCI Telecomm., Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999); *Mikob Properties, Inc. v. Joachim*, 468 S.W.3d 587, 593–94 (Tex. App.—Dallas 2015, pet. denied) (if rules of contract construction give the contract a definite legal meaning, it is construed as a matter of law). "When the evidence shows that no contract covers the service at issue, *then* the question of whether a party may recover in quantum meruit is for the trier of fact." *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 70 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

The Contract provides that Nations will pursue the owner's "best interest for a project replacement or repair at a 'price agreeable' to the insurance company and Nations Renovations with no additional costs to the Property Owner except the deductible." Items the insurance company did not agree to or approve were not included in the Contract. Cass testified that none of the Extra Work items for which Nations sought to recover were included in the original or

supplemental insurance claim.

Hong argues the following paragraphs cover all the items of work performed by Nations:

22. Supplemental claims billed by Company for additional work, general contracting fees or cost increases on your behalf and approved by your insurance company will become part of this agreement.

28. THIS CONTRACT IS COMPOSED OF THIS PAGE AND THE REVERSE SIDE OF THIS PAGE AND SHALL BE CONSIDERED THE ENTIRE CONTRACT BY THE PARTIES INVOLVED.

Paragraph 22 refers to supplemental items discovered during the project that are covered by insurance and provides that an additional insurance claim for those items is part of the Contract. Paragraph 28 is a standard merger clause. It does not mention work performed outside the scope of the Contract. Nothing in these paragraphs, nor the rest of the Contract, requires Nations to perform the Extra Work that is the subject of its quantum meruit claim. In contrast, another paragraph provides that Nations is not responsible for construction problems on the house, but if pointed out to Nations, it would assist the owner in correcting those problems on a "time and material basis."

Hong urges that items of Extra Work were listed on the Contract. The items listed on the first page of the Contract are:

Recommendations and Notes:

*Repair 20'6 x 12'0 concrete pad*
*Add 2" marble countertop*
*Add new fence sections & 1 gate*
*Cut down trees in backyard*

(italics indicate handwriting). These are only some of the items of Extra Work claimed by Nations. Nations asserts that the four items under the "Recommendations and Notes" heading were things that would be helpful to the owner, but were not covered by insurance and therefore not part of the Contract. Nations did not agree to do them unless the owner agreed to pay for them.

This provision indicates the items were repairs recommended by Nations. A recommendation is a "suggestion that someone should choose a particular thing or person that one thinks particularly good or meritorious." *Recommend*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Recommend*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981) (to bring forward as being fit or worthy). The plain meaning of the Contract indicates the parties intended the items listed under "Recommendations and Notes" as recommendations and notes about the project. The Contract does not obligate Nations to perform these items at no additional cost to Hong.

Because the four items are listed only as recommendations and the other items of Extra Work claimed by Nations are not mentioned in the Contract, we conclude the Extra Work is not covered by the Contract. Therefore, the trial court properly submitted the quantum meruit question to the jury. *See Gulf Liquids*, 356 S.W.3d at 70.

We overrule Hong's first issue.

**B. Directed Verdict and Submission of Counterclaim**

In her second and third issues, Hong argues the trial court erred by granting directed verdict on her DTPA, fraudulent inducement, and fraud counterclaims and refusing to submit those claims to the jury. At the close of evidence, Nations moved for directed verdict on these claims arguing there was no evidence of reasonable reliance because the Contract disclaimed reliance on representations that were not contained in the Contract. The trial court granted Nations' motion for directed verdict and denied Hong's request to submit questions and instructions on these counterclaims.

Proof of reliance is an essential element of fraud, fraudulent inducement, and DTPA claims. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) (DTPA); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (fraudulent inducement); *Schlumberger Tech.*

*Corp. v. Swanson*, 959 S.W.2d 171, 181, 182 (Tex. 1997) (fraud and statutory fraud). Parties to a contract may disclaim reliance on certain representations and such a disclaimer can negate reliance-based claims if the parties' intent is clear and specific. *See Italian Cowboys Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011). Whether an adequate disclaimer of reliance exists is a question of law. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 (Tex. 2008). To effectively disclaim reliance, the parties must use clear and unequivocal language and the circumstances surrounding formation of the contract must show the disclaimer is binding. *Italian Cowboy*, 341 S.W.3d at 336 & n.8.[2]

Nations relies on the following disclaimer in the Contract:

17. ANY REPRESENTATIONS, STATEMENTS, OR OTHER COMMUNICATIONS NOT WRITTEN ON THIS CONTRACT ARE AGREED TO BE IMMATERIAL and *not relied on by either party* and do not survive the execution of this contract.

(italics added).

Hong argues there was more than a scintilla of evidence to support her counterclaims and that her complaint was about the items written under the "Recommendations and Notes" heading. She asserts the sales person from Nations told her those items were "free" and she relied on that representation. However, the representation that those items were free is not contained in the written Contract. The items are listed as recommendations, not as free. Thus, any representation that the items were free is not written on the Contract and potentially subject to the disclaimer.

Unlike the standard merger clause in *Italian Cowboy*, the disclaimer provision here affirmatively states that unwritten representations are "not relied on by either party and do not survive the execution of this contract." This language is clear and unequivocal; it disclaims any

---

[2] The circumstances include whether the terms of the contract were negotiated or boilerplate, the parties specifically discussed the topic of the later dispute during negotiations, the complaining party was represented by counsel, the transaction was arm's length, and the parties were knowledgeable in business matters. *Id.*

reliance on representations that were not written into the Contract. *See Lau v. Reeder*, No. 05-14-01459-CV, 2016 WL 4371813, at *4 (Tex. App.—Dallas Aug. 16, 2016, no. pet. h.) (mem. op.) (concluding stock purchase agreement providing that no representation not included in the agreement "has been or is relied upon by either party" conclusively negated reliance); *Bever Properties, LLC v. Jerry Huffman Custom Builder, L.L.C.*, No. 05-13-01519-CV, 2015 WL 4600347, at *9–11 (Tex. App.—Dallas July 31, 2015, no pet.) (disclaimer in sales agreement effectively disclaimed reliance where it provided that developer was not bound by any representation unless contained in agreement and buyer signed agreement based on representations in the agreement, "not in reliance on any other statement or representations attributed to" developer); *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, No. 05–14–00125–CV, 2015 WL 3451675, at *9 (Tex. App.–Dallas May 29, 2015, no pet.) (mem. op.) (disclaimer stating party "voluntarily *and without reliance* upon any statement or representation by any party, lawyer or third party" was clear and unequivocal).

We now consider the circumstances surrounding the formation of the Contract. *See Bever Properties*, 2015 WL 4600347, at *10. Although the disclaimer is preprinted text on the back of the two-page Contract, the terms on the back were referenced on the front side, and Hong admitted at trial she read and understood the disclaimer. Hong testified she was free to write anything she wanted on the Contract when she signed it and could have crossed out the "Recommendations and Notes" heading. She had access to an attorney, either her husband or the attorney from his firm who represented her at trial. *See id.* at * 11 (noting parties had access to an attorney and decision not to protect their interests by seeking advice of counsel about contract should not bar enforcement of disclaimer of reliance); *RAS Grp., Inc. v. Rent–A–Center E., Inc.*, 335 S.W.3d 630, 640 (Tex. App.–Dallas 2010, no pet.) (noting that where parties regularly used lawyers and had opportunity to consult with them, even if they could not remember doing so,

evidence supported enforcement of disclaimer of reliance). The record shows there was no prior relationship between Hong and Nations and there is no indication the transaction was anything other than arm's length. Finally, Hong owns her own business and is a licensed real estate broker experienced with business matters.

We conclude the disclaimer of reliance is clear and unequivocal and the circumstances surrounding the Contract support enforcement of the disclaimer. *See Bever Properties*, 2015 WL 4600347, at * 10–11 (discussing factors used to consider surrounding circumstances). Hong did not present any evidence to overcome the disclaimer or to show reliance in light of the express contract language that she did not rely on any unwritten representations. Because the record establishes as a matter of law there is no evidence of reliance, the trial court correctly granted the directed verdict. Based on this ruling, the trial court properly denied Hong's request for jury questions. *See Patton v. Saint Joseph's Hosp.*, 887 S.W.2d 233, 246 (Tex. App.—Fort Worth 1994, writ denied) (no error in refusal to submit jury questions where directed verdict was properly granted).

We overrule Hong's second and third issues.

## C. Attorney's Fees

Hong's fourth and fifth issues challenge the award of attorney's fees to Nations through trial. (She does not challenge the conditional award of appellate attorney's fees.) She argues Nations was not the prevailing party for purposes of awarding attorney's fees, Nations failed to segregate its attorney's fees for claims that do not permit recovery of fees, and that the award of over $61,000 in attorney's fees on an award of $22,000 in damages is excessive.

### 1. Prevailing party

Chapter 38 of the civil practice and remedies code allows a party to recover reasonable attorney's fees "*in addition to* the amount of a valid claim" if the claim is for an oral or written

contract, services rendered, labor performed, or other specified claims. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (emphasis added). A party prevailing on a quantum meruit claim is entitled to recover attorney's fees. *Shamoun & Norman*, 483 S.W.3d at 790; *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 406 (Tex. App.—Dallas 2006, no pet.). To recover attorney's fees under this statute, a party must prevail on a claim within the statute *and* recover damages on that claim. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009).

Hong argues Nations did not prevail because its original petition requested more damages than the amount it claimed at trial and Hong obtained partial summary judgment on the higher damage model. Hong cites no authority for her prevailing party argument. Further, the meaning of prevail for purposes of Chapter 38 is clear: to prevail, a party must obtain a finding of liability for one of the claims listed in section 38.001 and recover damages for that claim. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (to recover attorney's fees, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages"). Here, the jury found that Hong breached the Contract and that Nations performed compensable work for which it was not paid. At trial, Nations requested contract damages in the amount of $7,084.49 and quantum meruit damages in the amount of $15,462.54. The jury found those amounts. Thus, Nations was the prevailing party for purposes of recovering attorney's fees under Chapter 38.

We reject Hong's prevailing party argument.

### 2. Segregation

Texas follows the American Rule and permits a party to recover attorney's fees only if provided by a contract or statute. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). When claims allowing recovery of fees are brought with claims that do not, any attorney's fees relating solely to a claim for which fees are not recoverable must be segregated

from the fees relating to recoverable claims. *Id.* at 313. Intertwined facts do not allow recovery of unrecoverable fees; "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. Legal services that would have been incurred on a recoverable claim are not disallowed simply because the services also further non-recoverable claims. *Id*. Further, fees incurred to "overcome any and all affirmative defenses" or to defend against a counterclaim that must be overcome to fully recover on the claim allowing fees do not require segregation. *See Varner v. Cardenas*, 218 S.W.3d 68, 69–70 (Tex. 2007) (per curiam); *Chapa*, 212 S.W.3d at 314. An attorney's opinion about the amount of services necessary on recoverable claims is sufficient to permit the jury to resolve the fact issue regarding the amount of reasonable attorney's fees for recoverable claims. *Id.* at 314 ("an opinion would have sufficed stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim"). An appellate court can then apply standard factual and legal sufficiency standards to the jury's verdict based on that evidence. *Id.*

There is no dispute in this case that segregation was required. Indeed, Nations presented evidence that its attorney segregated $5,000 of his fees for work on claims against Wei and other claims not permitting attorney's fees. Hong argues that while the attorney testified that $5,000 was segregated, his billing statements indicate substantial work was spent on unsuccessful causes of action and claims against Wei.

Nations originally sued Hong for breach of the Contract and both her and Wei for extra-contractual claims for the Extra Work and a property code claim. Hong and Wei filed answers raising several affirmative defenses, special exceptions, and Hong filed a counterclaim for breach of the Contract, DTPA violations, and later fraud and fraudulent inducement. After the trial court denied their special exceptions, Hong and Wei jointly filed multiple summary judgment

–13–

motions on their defenses to Nations's claims and motions to strike some of Nations's amended petitions. The trial court granted partial summary judgment on some of Nation's claims and theories, and eventually dismissed Wei from the suit. The court denied Hong's other summary judgment motions.

Nations's attorney, Michael Alfred, testified that the motions for summary judgment sought to dismiss the entire case and required significant preparation. He introduced his billing records for the case and explained the reasonableness of the time and rates charged by the attorneys and paralegals assisting him. In addition, the trial lasted four days and over one hundred exhibits were admitted in evidence. Alfred segregated $5,000 for fees on claims that did not advance or benefit the claims that went to the jury and testified that $72,000 was a reasonable and necessary fee through trial.

Hong's attorney cross-examined Alfred using the billing statements and presented the jury with an argument that over $34,000 in fees related to the claims against Wei and should be deducted from the $72,000 requested by Nations. The jury, however, returned a verdict for $61,400 in attorney's fees, a $10,600 difference from the amount requested. Because Nations offered evidence of segregated fees, the reasonableness of the fees and the amount of the segregation were questions of fact for the jury. The jury heard conflicting evidence about the amount of fees that should be segregated and resolved that conflict. Based on all the evidence, we conclude there is sufficient evidence of segregated attorney's fees to support the amount awarded by the jury.

We reject Hong's segregation argument.

### 3.    Excessiveness

The amount of reasonable attorney's fees for a particular case is a fact question based on several factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.

1997).[3] "The reasonableness of attorney's fees is a question of fact for the jury's determination and we may not substitute our judgment for the jury's." *Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). Attorney's fees should bear some reasonable relationship to the amount in controversy, but "there is no rule that fees cannot be more than the actual damages awarded." *Id.* (noting that in appropriate cases the amount of attorney's fees can greatly exceed the amount of damages recovered); *Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 441 (Tex. App.—Dallas 2011, pet. denied).

Hong argues the fees are excessive because they are more than three times the actual damages recovered. But as we said in *Metroplex Mailing*, there is no rule that fees cannot exceed the amount recovered. *See Metroplex Mailing*, 410 S.W.3d at 894, 900–01 (concluding evidence was legally and factually sufficient to support award of over $500,000 in attorney's fees on recovery of $40,000 damages for breach of contract). The amount in controversy is merely one of several factors to be considered by the jury in determining the amount of a reasonable fee. *Id.*

At oral argument, Hong argued it was error to award the amount of attorney's fees requested where the jury rejected a substantial amount of the damages requested, citing *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545 (Tex. 2009). However, the jury in this case did not reject a substantial amount of the damages requested at trial. At trial, Nations presented evidence and requested breach of contract damages in the amount of $7,084.49, plus quantum

---

[3] The factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

meruit damages in the amount of $15,462.54. The jury returned a verdict for both of those amounts. Here, as the supreme court held in *Smith*, "the evidence did no more than raise a fact issue to be decided by the jury." *Id.* at 548.

Nations presented evidence supporting the reasonableness of the fees in light of the circumstances of this case. It submitted detailed billing records of the services performed, evidence the rates charged were reasonable, and the work was necessary to respond to the various pretrial motions and to present the claims to the jury. *See Metroplex Mailing*, 410 S.W.2d at 900–01 (evidence supported amount of fees in case involving multiple claims and counterclaims seeking damages over $3 million, attorney submitted detailed invoices itemizing the work performed, and there was no evidence the rate charged was unreasonable). An attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award. *Id.* Alfred's testimony and billing statements and Hong's cross-examination regarding segregation were presented to the jury and the jury awarded less than the amount requested for attorney's fees; more than $10,000 less. Considering all the evidence, the jury's finding is supported by factually sufficient evidence and is not excessive.

We overrule Hong's fourth and fifth issues.[4]

### D. Factual Sufficiency

Hong's sixth issue challenges the factual sufficiency of the evidence to support several of the jury's findings. Although she lists multiple jury questions in the text of her issue, she argues only about the answers to the questions rejecting her breach of contract counterclaim and the amount of Nations's breach of contract damages.[5]

---

[4] Hong includes the attorney's fees finding in her sixth issue, which challenges the factual sufficiency of the evidence. However, she does not raise any additional arguments about attorney's fees under that issue. Because her arguments regarding segregation and excessiveness of attorney's fees overlap a factual sufficiency issue, we overrule issue six regarding attorney's fees.

[5] We have affirmed the trial court's directed verdict and need not discuss her arguments about the

–16–

Hong points to evidence that Nations repaired the property with used items instead of new ones, performed slipshod work, failed to repair needed items, and the roof was falling apart and needed replacement one year after installation. She cites evidence that Nations did not install window blinds throughout the property, a chair rail, wallpaper, and paneling in the dinette, insulation and drywall in the water heater room, exterior and interior doors, and exterior siding.

Cass explained that because Hong's policy only paid for the actual value of the used items in the property, the scope of the project did not include the new items Hong wanted. He testified Nations did not install window blinds because Hong agreed to omit them in order to offset the cost of the tile upgrades she wanted. Hong also requested Nations remove the old wood paneling and chair rail in the dinette and replace it with sheetrock to make the house look more modern. There was evidence, including photographs, showing the doors were installed and Hong admitted that fact on cross-examination. Hong indicated she wanted new doors, but her policy only covered actual cost value instead of replacement cost value. There was also evidence that drywall and insulation was installed in the water heater room. Hong testified they were not installed on the back and a side wall of the room. She later admitted she did not know whether insulation on the back of the room next to the garage was required. Photographs showed exterior siding was replaced. Cass testified all the work under the Contract was completed. The jury heard evidence the house passed city inspections and the inspections necessary for the final insurance payment.

Hong presented evidence from a roofing contractor who inspected the roof approximately a year after Nations completed the work. The contractor identified a three-quarter inch rise in one area of the roof, several raised nails, problems with some of the turbines and vents on the roof, and that some of the decking and other items had not been replaced.

sufficiency of the evidence of the alleged misrepresentations.

Cass testified that the trusses supporting the entire roof were not covered by the insurance policy. He explained that the area identified as a three-quarter inch rise was not part of the structural area where Nations performed the work. The insurance company did not approve replacing the decking for the entire house. Nations replaced all the shingles on the roof, the trusses for the garage, kitchen, and breakfast area, and the decking in the areas approved by the insurance company. Cass noted that the roofing contractor's photographs showed hail damage to the roof turbines and vents, indicating the roof was damaged by hail after Nations completed the work. Cass explained that other items, such as raised nails and peeling paint on some vents, were warranty items and Nations would repair them under its warranty if informed about the problem. However, Nations did not provide a warranty to Hong because the Contract specifies the warranty is void if the Contract is not paid in full.

Next, Hong complains that the only evidence supporting the jury findings was Cass's testimony and he did not have documentary evidence to support his testimony. The record contains documents supporting Cass's testimony, such as city inspection reports and a letter stating the final insurance payment would be issued after a final inspection and after Hong signed and delivered a statement of satisfaction. But even if no documents supported his testimony, the jury was free to believe his testimony over Hong's and her witness. The credibility of witnesses and the weight of their testimony is up to the jury and nothing in this record shows any reason to disregard their findings. *See Ford*, 252 S.W.2d at 563. Based on the evidence in the record, including evidence the property was inspected, final payment was approved by the insurance company and the mortgage company, and a certificate of occupancy was issued by the city, the jury could reasonably conclude the work was completed and adequate for the project.

Accordingly, the jury's refusal to find Nations breached the Contract is not so against the

great weight and preponderance of the evidence as to be clearly wrong or unjust. *See Dow Chem.*, 46 S.W.3d at 242.

Regarding contract damages, Hong argues the evidence is insufficient to support the award of $7,084.49 because Nations's live pleading mentioned a credit in the amount of $1,314.76. Cass explained that when he initially filed suit, he sought to recover the replacement cost values on the insurance claim. Replacement cost value would have included new appliances, but because used appliances were installed, he offered a credit on the replacement value. After the trial court granted summary judgment on his claim for replacement cost value, the credit no longer applied because Nations sought only the actual cost of the used appliances actually installed. Cass testified that the amount owed on the final insurance payment was $6,084.49 plus Hong's $1,000.00 deductible for a total of $7,084.49 as contract damages. The evidence the jury heard supports its verdict on breach of contract damages.

We overrule Hong's sixth issue.

## CONCLUSION

Having overruled all of Hong's issues, we affirm the trial court's judgment.


151036F.P05


/Craig Stoddart/
CRAIG STODDART
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HEJIN HONG, Appellant

No. 05-15-01036-CV     V.

NATIONS RENOVATIONS, LLC,
Appellee

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-14-00212-D.
Opinion delivered by Justice Stoddart.
Justices Francis and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee NATIONS RENOVATIONS, LLC recover its costs of this appeal and the full amount of the trial court's judgment from appellant HEJIN HONG and from the surety or sureties on appellant's supersedeas bond, if any, or from any cash deposit in lieu of a supersedeas bond. After judgment and all costs have been paid, we **DIRECT** the clerk of the trial court to release the balance, if any, of any cash deposit in lieu supersedeas bond to the person who made the deposit.

Judgment entered this 29th day of December, 2016.