**Jean PIERRE, Appellant**

v.

**R. Scott STEINBACH and The Steinbach Law Firm, Appellees.**

No. 05–11–00265–CV.

Court of Appeals of Texas, Dallas.

Aug. 16, 2012.

Rehearing Overruled Sept. 12, 2012.

Cary I. Schachter, Raymond P. Harris, Jr., Lesley W. Lewis, Schachter & Harris, LLP, Irving, TX, for Appellant.

Alison H. Moore, Stephen Carli Richman, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, TX, for Appellees.

Before Justices O'NEILL, MARTIN RICHTER, and MYERS.

## OPINION

Opinion By Justice MARTIN RICHTER.

Appellant Jean Pierre appeals the trial court's judgment in this legal malpractice suit against attorney appellee R. Scott Steinbach and the Steinbach Law Firm. A jury found both Pierre and Steinbach negligent and awarded Pierre $275,000 in damages. In three issues, Jean Pierre argues the trial court erred by (1) reducing the jury award under the "one satisfaction rule;" (2) finding the evidence legally or factually sufficient to support the jury finding of negligence against Pierre; and (3) failing to enter a judgment against the Steinbach Law Firm based on "undisputed" vicarious liability. In four issues on cross-appeal, R. Scott Steinbach and the Steinbach Law Firm argue the trial court erred by finding the evidence legally sufficient to support the verdict regarding (1) breach of the standard of care; (2) proximate cause; (3) collectability; and (4) damages.

### Background

Jean Pierre ("Pierre") has been a commercial real estate investor in Dallas, Texas for the last twenty years. R. Scott Steinbach and the Steinbach Law Firm ("Steinbach") represented Pierre in 2005 when Pierre bought a piece of commercial real estate in Frisco, Texas. Pierre decided to sell this same piece of property in 2006. Greenstreet Properties, LLC ("Greenstreet"), represented by Thomas Acevedo ("Acevedo"), offered to buy the property for $8,426,188 from Pierre.

Pierre and Acevedo came to an agreement and signed a Letter of Intent ("LOI") on June 21, 2007. Pierre then took the same contract used in the 2005 purchase and changed the names, purchase price, amount of earnest money and other terms. Pierre sent the contract to Acevedo who forwarded the contract to Greenstreet's attorneys. After reviewing the contract, Greenstreet sent the contract back to Pierre revised with numerous changes; sections had been red-lined or struck through and new terms had been added. The terms regarding the earnest money and review period were significantly changed and they are the underlying issue of this suit.

*Negotiations*

The LOI provided Greenstreet deposit $100,000 in earnest money and they would have 60 days to review the property and close the deal. During this 60–day review period, Greenstreet could terminate the contract and get all of their earnest money back except for $100. The LOI also provided a 30–day closing period after the review period and three additional 30–day extensions to the closing period. However, the $100,000 became non-refundable once the initial 60–day period expired. The LOI provided that each 30–day extension required Greenstreet to deposit an additional, non-refundable, $100,000.

The contract that Pierre drafted contained the same earnest money terms as the LOI. However, Greenstreet's initial revised contract changed those terms. The revised contract provided for the same $100,000 deposit in earnest money which was refundable during the review period less $100 just like the LOI. However, the revised contract defined an initial review period of 60 days and allowed three 30–day extensions to the review period, each requiring an additional $100,000 deposit of earnest money. The main difference be-

tween the LOI and the revised and final contract was the contract provided that *all* of the earnest money was refundable as long as the review period, *extended or not,* had not expired.

*Steinbach's role*

When Pierre received the revised contract from Greenstreet, he arranged to meet with Steinbach to discuss the changes. Pierre sent Steinbach an email and attached a copy of the revised contract before their meeting. On July 2, 2007, Pierre met Steinbach at Steinbach's office and they discussed the changes to the contract. Greg Kline, the attorney representing Greenstreet, testified that Steinbach called him and they went through the contract, line-by-line, and discussed the changes proposed by Greenstreet. After Pierre's meeting with Steinbach, Pierre and Greenstreet continued to negotiate terms and exchanged several more revisions of the contract. However, the terms regarding the earnest money and review period were never changed after the initial strike-through and additions by Greenstreet. Pierre signed the final contract on July 16, 2007.

*The deal falls apart*

After both parties signed the contract, Greenstreet began exercising their review period. After running into delays in dealing with the City, Greenstreet exercised three extensions of the review period and put an additional $300,000 of earnest money into the escrow account. On February 21, 2008, Greenstreet decided to terminate the contract and requested their $400,000 back less the $100 for consideration to Pierre as stated in the contract. Pierre refused to authorize release of the funds.

Consequently, Pierre brought this legal malpractice suit against Steinbach. After a jury trial, the jury found Pierre 30% negligent and Steinbach 70% negligent and awarded Pierre $275,000 in damages.

Pierre moved to disregard the negligence finding against him and for judgment for the full damages against both defendants. Alternatively, Pierre moved for judgment on the verdict. Steinbach moved for judgment notwithstanding the verdict claiming a lack of evidence to support it. Alternatively, Steinbach moved for a credit based on the one-satisfaction rule because of the outcome of an earlier lawsuit.[1] The trial court rendered judgment for Pierre in the amount of $11,998.52 based on the one-satisfaction rule.

### Analysis

Because our disposition of Steinbach's cross-points relating to legal sufficiency of the evidence necessarily affects our disposition of the remaining points, we will first address Steinbach's cross-points.

### Standard of Review

■ A no-evidence point is a question of law. *See Tomlinson v. Jones*, 677 S.W.2d 490, 492 (Tex.1984). We review a no-evidence point by considering only the evidence and inferences tending to support the jury's finding and disregard all evidence and inferences to the contrary. *See First Baptist Church v. Bexar County Appraisal Review Bd.*, 833 S.W.2d 108, 111 (Tex.1992).

■ We sustain a no-evidence point only when the record discloses (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence established conclusively the opposite of the vital fact. *See Cecil v. Smith*, 804 S.W.2d 509, 510 n. 2 (Tex.1991). If there is any evidence of probative force to support the jury's finding, the no-evidence

challenge fails. *See First Baptist Church*, 833 S.W.2d at 111. However, when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence at all. *James v. Mazuca and Assocs. v. Schumann*, 82 S.W.3d 90, 93 (Tex.App.-San Antonio 2002, pet. denied).

### Applicable Law

■■ An action for legal malpractice is based on negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex.1989) (op. on reh'g). To state a claim for legal malpractice, a plaintiff must show that (1) the attorney owed the plaintiff a duty; (2) the attorney's negligent act or omission breached that duty; (3) the breach proximately caused the plaintiff's injury; and (4) the plaintiff suffered damages. *Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex.2009).

■■ A plaintiff must generally present expert testimony to establish the breach and causation elements of a legal malpractice claim. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117, 119–20 (Tex.2004). Breach of the standard of care and causation are separate inquiries, and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other. *Id.* at 119.

### Standard of Care

■ In his first issue, Steinbach contends Pierre failed to offer expert testimony on the applicable standard of care and breach. Pierre responds that Steinbach himself established the standard of care.

1. Following termination of the contract, Pierre brought suit against Greenstreet. The case was ultimately settled, with $180,501.48 to be disbursed to Pierre.

A lawyer in Texas is held to the standard of care that would be exercised by a reasonably prudent attorney. *Cosgrove*, 774 S.W.2d at 664. Expert testimony is not required if the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge. *Mazuca*, 82 S.W.3d at 97.

Here, Steinbach's alleged breach was not within a jury's common understanding. Whether Steinbach was negligent and breached his duty of care in advising Pierre regarding the changes made in the contract, when Pierre is an experienced commercial real estate broker who actually initiated the contract, is not a matter of common knowledge. Pierre himself testified he called Steinbach because he did not understand all of the changes made to the contract.

Steinbach stated in his deposition and again at trial he believed he had a duty to Pierre to inform him of anything in the contract that affected the earnest money being refunded. Steinbach further testified he did discuss the changes regarding the earnest money with Pierre; he specifically noticed it and pointed it out because it was language that he himself had added to the contract when Pierre originally bought the property. In so testifying, Steinbach established the standard of care.

Although Steinbach testified that he discussed the changes with Pierre, Pierre testified that Steinbach failed to explain the changes would result in the possibility that he would not receive all of the earnest money deposited. From this testimony, the jury could reasonably infer that Steinbach breached the standard of care. Steinbach's first issue is overruled.

*Causation*

In his second issue, Steinbach contends Pierre failed to offer legally sufficient evidence of proximate cause. Even where it can be shown that a lawyer has breached the standard of care, a claim of legal malpractice may nonetheless fail where there is not expert testimony linking the lawyer's breach to the damages suffered by a plaintiff. *See Haynes & Boone v. Bowser Bouldin Ltd.*, 896 S.W.2d 179, 181–82 (Tex.1995) (finding no evidence that damages of a bank foreclosure was caused by lawyer's unsuccessful defense in a lawsuit). Pierre claims his own testimony that he would not have signed the contract which caused his harm, but for Steinbach's negligence, is sufficient evidence of causation. We disagree.

In the present case, Pierre was required to prove the causal link between Steinbach's negligence and his harm. *Alexander*, 146 S.W.3d at 119. In other words, did Pierre produce any evidence that Steinbach's acts or omissions were the proximate cause of Pierre's damages? *See Tolpo v. Decordova*, 146 S.W.3d 678, 683 (Tex.App.-Beaumont 2004, no pet.). In malpractice cases involving business transactions, a plaintiff must show that the other party would have agreed to the additional or changed term in the contract and that the inclusion of the term would have put the plaintiff in a better position. *Id.* at 684. (finding a lack of evidence that the counter party would have accepted a negotiable term).

Pierre contends his testimony that he would not have signed the contract if he had understood the earnest money provisions is enough to show causation. Steinbach contends Pierre was required to prove Greenstreet would have agreed to a non-refundable earnest money provision in the real estate contract and that Greenstreet would have deposited the earnest money to secure the extensions under the contract, knowing that those deposits would be non-refundable.

This dispute has at its core a negotiable term that was included in the two-page LOI which was signed by both parties. Pierre argues the LOI is evidence that Greenstreet would have agreed to the non-refundable earnest money provision. However, after Pierre drafted the initial twenty-one page contract and sent it to Greenstreet, Greenstreet struck the non-refundable earnest money provisions and made it perfectly clear they were not going to accept the earnest money provisions. Further, Mr. Kline, the attorney who represented Greenstreet, testified that he had a telephone conversation with Steinbach and they went through the changes in the contract, "line-by-line," and the earnest money provisions were never changed in the later drafts of the contract. Mr. Kline also stated the "letter of intent, always in my experience but I presume in everybody else's too, that this is just a starting point and there is going to be a full purchase and sale contract that is going to be signed by the parties."

We would have to engage in impermissible inference stacking to reach Pierre's desired conclusion. *See Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 735 (Tex.App.-San Antonio 2007, pet. denied). We would first have to infer that Pierre would have insisted on the earnest money provisions being non-refundable after the first 60 days. Next we would have to infer Greenstreet would have agreed to those terms and signed the contract. Finally, we would have to infer that Greenstreet would choose to terminate the contract after depositing $400,000 of earnest money that had become non-refundable. Such inferences would be strained at best in light of ample evidence indicating Greenstreet had no intentions of accepting the contract with non-refundable earnest money deposited to secure a review period.

After reviewing the record, we conclude that there is no evidence that the alleged breach of duty by Steinbach caused Pierre to lose the earnest money from his contract with Greenstreet. The only evidence on the issue of causation is speculative. *See Baker Botts*, 224 S.W.3d at 732. We cannot conclude the letter of intent is sufficient evidence to support causation, an essential element of Pierre's cause of action for legal malpractice. Steinbach's second issue is sustained.

*Conclusion*

In light of Pierre's failure to prove causation, we reverse the judgment of the trial court and render a take nothing judgment in favor of R. Scott Steinbach and the Steinbach Law Firm. Because the failure to prove causation is dispositive, we need not reach the merits of Pierre's appeal.