

# NUMBER 13-23-00348-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

UNIMEX LOGISTICS, LLC,                                          Appellant,

v.

LYNSE GUERRA,
JOHN B. SKAGGS, AND
SKAGGS & GUERRA,                                               Appellees.

## ON APPEAL FROM THE 476TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Justice West**

This is an appeal of a legal malpractice claim arising from an underlying personal injury lawsuit. Appellant Unimex Logistics, LLC, filed suit against appellees Lynse Guerra, John B. Skaggs, and Skaggs & Guerra (Skaggs & Guerra) for negligence, gross negligence, and breach of fiduciary duty. Unimex argues that the trial court erred when it

granted Skaggs & Guerra's motions for summary judgment and found that (1) no genuine issue of material fact exists as to the element of causation and (2) fee forfeiture is not an available remedy for its breach of fiduciary duty claim. We affirm.

## I.    BACKGROUND

In the underlying lawsuit, Ray Castillo sued Unimex, a trucking company, and Unimex's employee, Luis de Jesus Lara Muñoz (Lara), for damages after Lara hit Castillo in a company tractor-trailer. *See generally Lara Munoz v. Castillo*, No. 13-18-00451-CV, 2020 WL 1856476, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 9, 2020) (mem. op.), *modified by* No. 13-18-00451-CV, 2020 WL 1887807, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 14, 2020, no pet.) (suppl. mem. op.). At trial, Lara did not dispute that he was fully responsible for the crash, evidence was introduced that Unimex or Lara allegedly violated several regulatory or safety violations prior to the accident, and Castillo suffered injuries to multiple parts of his body and required at least one spinal surgery. *Id.* at *1–3.

Unimex had a $1,000,000 commercial auto liability insurance policy with United Specialty Insurance Company (USIC). USIC hired Skaggs & Guerra to represent Unimex and Lara. Throughout the litigation, Castillo made three *Stowers* demands: one for policy limits of $1,000,000, one for $750,000, and another, during trial, for $915,000. It is undisputed that Olin Bonner, the insurance claim handler for the underlying suit, had the ultimate power to accept or deny the settlement demands on behalf of USIC. Bonner's team included Steve Mulkey and Sandra Smith, from North American Risk Services

2

(NARS), who handled day-to-day tasks and reported to Bonner.[1] Bonner's team rejected the first *Stowers* demand. Bonner authorized $250,000 in response to Castillo's second demand and $350,000 for the last demand, which Castillo rejected. After a jury trial, the trial court entered a final judgment against Unimex for $2,857,539.32, not including pre- or post-judgment interest.[2]

Unimex sued USIC for, among other things, violating the *Stowers* doctrine and for failing to settle the lawsuit within the policy limits,[3] and sued Skaggs & Guerra for negligence, gross negligence, and breach of fiduciary duty. Unimex settled its claims against USIC as USIC agreed "to pay the full amount of the judgment entered against Unimex," and "$400,000 to satisfy and release all claims brought by Unimex and [Lara]" in exchange of releasing USIC, its affiliates, and employees from liability. As a result of the settlement and based on the contingency fee agreement with its lawyers, Unimex incurred attorney's fees in the amount of $807,004 (40% of Unimex's recovery) plus $3,409.75 in expenses. In its suit against Skaggs & Guerra, Unimex sought actual damages, fee forfeiture, exemplary damages, and consequential damages, including the "increased cost of insurance premiums proximately caused by having an open claim with a judgment."

---

[1] NARS was an entity involved with the adjustment of this claim. Bonner worked for Winter Group, Inc., which was also involved in the adjustment of the claim in the underlying suit.

[2] This Court affirmed the judgment as modified after suggesting a remittitur of $283,700 in damages, which Castillo accepted. *Lara Munoz v. Castillo*, No. 13-18-00451-CV, 2020 WL 1887807, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 14, 2020, no pet.) (suppl. mem. op.).

[3] "Under the *Stowers* doctrine, an insurer has a common-law duty to settle third-party claims against its insureds when it is reasonably prudent to do so." *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 267 (Tex. 2021) (orig. proceeding) (citing *Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009)).

Skaggs & Guerra filed both traditional and no-evidence motions for summary judgment on causation. It also filed a traditional, partial motion for summary judgment on Unimex's breach of fiduciary duty claim and argued that fee forfeiture was not an available remedy under that claim.

Attached to its motions on causation was a declaration by Bonner, who stated in relevant part:

> 6. While I consult retained counsel when deciding whether to accept or make a settlement offer, I make my own independent judgment on [USIC's] behalf on those decisions. On many occasions, I have declined to accept a settlement offer despite retained counsel's recommendation to the contrary. Retained counsel's opinion is only one factor that [USIC] and I consider[] in these kinds of decisions. Skaggs [&] Guerra, like all other counsel retained by [USIC] in cases within my authority, had no power or authority to settle the Underlying Suit without my approval.
>
> . . . .
>
> 8. I understand that Unimex . . . complain[s] about the failure to accept three settlement demands Castillo made in the Underlying Suit. . . . [USIC] and I received all three of these demands, and I was aware of them. If Skaggs [&] Guerra had hypothetically recommended that [USIC] accept these offers, I would have nonetheless rejected the settlement offers and declined to settle the Underlying Suit for those amounts. My independent judgment was that the Underlying Suit did not warrant those settlement amounts.

The trial court granted Skaggs & Guerra's motions on reconsideration.[4] In its order on causation, it first noted that Unimex's claims relied not only on Skaggs & Guerra's alleged negligence but also on the "alleged negligence by the insurer." In other words, Unimex had to prove that Bonner, on USIC's behalf, would have accepted the underlying settlement demands if Skaggs & Guerra had recommended it. It concluded that even if

___

[4] Skaggs & Guerra also filed a traditional motion for summary judgment under the one satisfaction rule, arguing that "[t]he one satisfaction rule bars this legal malpractice suit as a matter of law as a result of Skaggs and Guerra's statutory right to a settlement credit." The trial court denied that motion.

4

Skaggs & Guerra "failed to meet the standard of care or duty owed to [Unimex], . . . their evaluation of the underlying case must have been a substantial factor in the insurer's decision not to settle the case within policy limits." The trial court then found:

> Nothing in the record contradicts Bonner's statement that his decision not to settle the case for a sum within policy limits was based on [Skaggs & Guerra's] actions, opinions, or statements in the underlying case; in fact, his deposition testimony and the claim file notes support the fact that the insurance team handling the case for the insurer made decisions concerning the value of the underlying case independently, without any indication that [Skaggs & Guerra's] evaluation had a significant impact on their decisions on settlement.

The trial court, after citing areas of the insurance claim file notes, concluded that "[b]ased on evidence like this, the Court cannot find that [Skaggs & Guerra's] alleged negligence was a substantial factor in the decision not to settle the underlying case for policy limits." It also found that "[t]he evidence provided by [Unimex] shows that the insurance team disregarded [Skaggs & Guerra's] settlement value before trial and, instead, put substantial weight on their analysis of" various factors, such as "their own analysis of contributory negligence" and that Castillo continued to work "despite alleging pain." This appeal ensued.

## II.    CAUSATION

By its first issue, Unimex argues that the trial court erred by granting Skaggs & Guerra's motions for summary judgment on causation because it presented sufficient evidence to raise a genuine issue of material fact on this element of its claim.

## A.    Standard of Review & Applicable Law

We review the grant or denial of a summary judgment de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). If, as in this case, a party

5

moves for a no-evidence summary judgment and a traditional summary judgment, we will first review the trial court's judgment under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Under the no-evidence standard, the non-movant must produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Id*. The burden of producing evidence is entirely on the non-movant; if the non-movant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). If the non-movant fails to produce more than a scintilla of evidence under the no-evidence burden, there is no need to analyze whether the movant's summary-judgment evidence satisfies the traditional rule 166a(c) burden. *Id.* Under both standards, we examine the record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Each of Unimex's claims against Skaggs & Guerra requires the element of proximate causation. *See Bos v. Smith*, 556 S.W.3d 293, 303 (Tex. 2018) ("Claims based on ordinary negligence and fiduciary duty both require showing damages were proximately caused by breach of a duty."). "Proximate cause has two components: foreseeability and cause in fact." *Id.* Skaggs & Guerra challenged cause in fact. "The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about [the] injury, without which the harm would not have occurred." *Rogers v. Zanetti*, 518 S.W.3d 394, 403 (Tex. 2017) (cleaned up) (citing *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). "If a negligent act or omission merely creates the condition that makes the harm possible, it is not a substantial factor in causing the harm as a matter of law." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex.

6

2016) (cleaned up) (citation omitted). Conjecture, guess, and speculation are insufficient to prove cause in fact. *Id.*

## B.    Analysis

To prove cause in fact in this case, Unimex was required to show that Bonner would have hypothetically relied on Skaggs & Guerra's recommendation to settle and would have accepted one of Castillo's settlement offers. *See HMC Hotel Props. II Ltd. P'ship v. Keystone-Tex. Prop. Holding Corp.*, 439 S.W.3d 910, 917 (Tex. 2014); *Forshee v. Moulton*, 694 S.W.3d 803, 813 (Tex. App.—Houston [14th Dist.] 2024, no pet.); *Pierre v. Steinbach*, 378 S.W.3d 529, 534 (Tex. App.—Dallas 2012, no pet.); *see also Axcess Int'l, Inc. v. Baker Botts, L.L.P.*, No. 05-14-01151-CV, 2016 WL 1162208, at *5 (Tex. App.—Dallas Mar. 24, 2016, pet. denied) (mem. op.) ("Under such circumstances, [the plaintiff client] had to prove—not just suggest or theorize, but prove with competent, non-speculative evidence—that the third parties *would* have actually taken such action.").[5]

Unimex argues that the evidence raises a fact issue on causation. It then argues that the trial court could not consider Bonner's declaration as competent summary judgment evidence because it was conclusory, and Bonner is an interested witness

---

[5] Unimex notes in its brief that "[t]he trial court erroneously overlooked the fact that Skaggs & Guerra's conduct could be a concurring cause in bringing about the injury—i.e., the decision not to settle for policy limits." Concurrent causation "'concurs with the continuing and co-operating original negligence in [causing] the injury,' leaving the causal connection between the defendant's negligence and the plaintiff's harm intact." *Stanfield v. Neubaum*, 494 S.W.3d 90, 98 (Tex. 2016) (citation omitted). Unimex does not explain how Skaggs & Guerra's alleged negligence "concurred" or "co-operated" with Bonner's alleged negligence. In fact, Unimex's theory of causation is that Skaggs & Guerra caused Bonner not to settle—not that Bonner was independently negligent and caused harm. *See id.*; *see, e.g.*, *Pierre v. Steinbach*, 378 S.W.3d 529, 534 (Tex. App.—Dallas 2012, no pet.) ("In malpractice cases involving business transactions, a plaintiff must show that the other party would have agreed to the additional or changed term in the contract and that the inclusion of the term would have put the plaintiff in a better position."). Thus, to the extent that Unimex raises this issue, we overrule it.

whose "testimony about what he would have done is subjective, not credible, [and] not readily controvertible." We address the summary judgment evidence in turn.

### 1. Expert Testimony

Unimex originally obtained Michael Sean Quinn as its expert. After the trial court granted Skaggs & Guerra's motion for reconsideration, it supplemented its summary judgment response with an affidavit from Mark A. Ticer. Both experts contended that Skaggs & Guerra were negligent because they failed to properly value the claim and failed to advocate settlement in the underlying lawsuit. They opined that Skaggs & Guerra's alleged negligence caused Bonner to reject Castillo's settlement offers.

For example, Quinn opined in his declaration that "Bonner, the ostensible decision-maker for the insurer, rejected the offer, based: (1) at least in part on statements and recommendations by Skaggs and (2) based in part on Skaggs omissions in dealing with the insurer." He stated that in his experience, "claims-handlers like Bonner are very cautious about not paying sufficient attention to the advocacy and arguments of retained counsel in Stowers situations." Ticer opined in his affidavit that "[Skaggs & Guerra] provided an evaluation to the claims representatives, including Bonner, that minimized or failed to consider and confront the facts, the damages, and other important considerations in the [underlying] [l]awsuit."

The experts alleged that Bonner did not have adequate information from Skaggs & Guerra to form a proper evaluation of the case. As Ticer opined:

> Significantly, Bonner and the other insurer representatives had no independent knowledge or access to information about the Liability Lawsuit including depositions and damages, and therefore had to depend on [Skaggs & Guerra] to provide them all the information, facts, and evidence for the [underlying] [l]awsuit.

8

Quinn similarly stated that Skaggs & Guerra's "influential errors by omission were, more likely than not, a causally significant component in Bonner's errors in declining to settle the underlying case for policy limits," and they failed to make sure "Bonner[] was fully informed as to the case at hand and the risks involved."

Conclusory or speculative expert testimony is not competent summary judgment evidence and is insufficient to create a question of fact to defeat summary judgment. *See Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 839 (Tex. 2010); *Montoya v. Nichirin-Flex, U.S.A., Inc.*, 417 S.W.3d 507, 513 (Tex. App.—El Paso 2013, no pet.); *see also Thompson & Knight LLP v. Patriot Expl., LLC*, 444 S.W.3d 157, 162 (Tex. App.—Dallas 2014, no pet.) ("An expert's opinion that is speculative or conclusory or assumes facts contrary to evidence in the record is legally insufficient."). "A statement is conclusory if it does not provide the underlying facts to support the conclusion." *Montoya*, 417 S.W.3d at 513. "An unsupported legal conclusion is likewise conclusory." *Id.* "[E]ven when some basis is offered for an [expert's] opinion, if that basis does not, on its face, support the opinion, the opinion is still conclusory." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 817 (Tex. 2009); *Rogers*, 518 S.W.3d at 408.

Despite the experts' contentions that Bonner did not have "independent knowledge or access to information" about the lawsuit throughout the litigation, the summary judgment evidence submitted by Unimex indicates that Bonner and his team were well-informed on the evidence presented throughout the case. The insurance claim file notes and other supporting documents were attached as exhibits to Unimex's response to the no-evidence motion for summary judgment. The claim file notes indicate that Bonner's

team reviewed the police report of the accident, Castillo's medical records, Castillo's deposition, other witness deposition testimony, expert witness deposition testimony and reports, and a surveillance video showing Castillo playing baseball. As explained in more detail in the next section, the claim file notes show Mulkey, Smith, and others were constantly updating Bonner, and Bonner considered these documents when he authorized settlement offers. The team specifically focused on the fact that Castillo continued to work after the accident despite alleging ongoing pain and undergoing surgery, the team's perception that Castillo was contributorily negligent, and Mulkey's assessment that a verdict over $350,000 was "unlikely in this venue."

Moreover, the experts' testimony was merely speculative as to what Bonner would have done had Skaggs & Guerra recommended accepting Castillo's settlement demands. *See HMC*, 439 S.W.3d at 916–17. In *HMC*, Keystone, a "Texas Property Holding Corporation," sued its tenants, the owners and operators of the Marriott Riverwalk hotel, for tortious interference after a potential buyer backed out of purchasing the land under the hotel. *Id.* at 911. Keystone contended that a letter from Marriott "scuttled the sale" because the buyer's title insurers received the letter and declined to issue insurance on the property. *Id.* at 912. In the letter, Marriott declined to waive its "first right of negotiation" to purchase the land and accused Keystone of violating that right by negotiating the sale of the land with "a third party" before Marriott. *Id.* The letter "demanded Keystone extend a new 90-day negotiation period that would 'focus on establishing a fair market price for the Leased Premises and not on the terms of any deal . . . prematurely negotiated with any third party.'" *Id.* The jury issued a verdict in favor of Keystone, finding that the Marriott's letter amounted to tortious interference of the sale. *Id.* at 911–12.

10

The Texas Supreme Court reversed. *Id.* at 911, 917. The Court held that there was no evidence that Marriott's letter caused the sale to fail because the record showed that the buyer's title insurers declined to issue a policy on the property irrespective of the letter. *Id.* at 915–17. It held that the testimony from Keystone's lawyers that the letter increased the "risk" for the title insurers, "made it 'much more difficult for [the insurers] to write a policy,'" and "'reduce[d] the odds' of closing the deal," were merely speculative of "what the insurers might have done differently." *Id.* at 916–17 ("At most, the testimony Keystone relies on raises the inference that the title insurers could have insured around section 14.02, not that they would have."). It also held that the buyer's title insurers testimony about the effect of Marriott's letter was "not tantamount to testimony that the outcome would have been any different if [Marriott] had not sent its letter." *Id.* at 917. Evidence indicated that the insurers would never insure the property without the waiver from Marriott. *See id.* at 914–15, 916 ("[N]o one argues [Marriott] was obligated to provide the waiver . . . . At some point before closing, the title insurers would have insisted on the waiver, and Keystone, powerless to force [Marriott's] hand, would have been unable to produce it. The deal failed not because of a letter, but because Keystone was unable to convince [Marriott] to voluntarily relinquish its rights.").

Quinn concluded that had Skaggs & Guerra "urged" Bonner to settle, "he would have seriously considered that advice," and had Skaggs & Guerra "complied with the standard of care, . . . Bonner might well have settled." He contended that Bonner's decision not to settle was based "at least in part" on Skaggs & Guerra's recommendations and "any experienced claims-handler" would seriously consider them. Ticer concluded

11

that it would have been unusual or unreasonable for Bonner to have rejected Skaggs &

Guerra's hypothetical recommendation to settle:

> 26. . . . My experience, training, and having dealt with insurers regularly for over 35 years shows insurers regularly and systematically evaluate and settle claims based on defense counsel's evaluation except where there are coverage issues or fraud involved (none of which were shown to be at issue in the Liability Lawsuit);
>
> . . . .
>
> 29. . . . [I]n my experience, training, practice, and dealing with insurers and their representatives for over 35 years, a reasonably prudent insurer will follow defense counsel's evaluations, analysis, and recommendations, and settle and/or accept a demand consistent with defense counsel's evaluation and analysis. It would be not only unreasonable, but illogical to ignore defense counsel's evaluation where such analysis and evaluation is competently, objectively, and accurately documented, prepared, and referenced.

Here, as in *HMC*, the experts' testimony is not competent summary judgment

evidence to raise a fact issue on causation because they merely speculate as to what

Bonner might have done had he received different counsel from Skaggs & Guerra. *See

id.* ("Testimony about what the insurers might have done differently is conclusory—'[b]are,

baseless opinions . . . will not support a judgment even if there is no objection to their

admission in evidence.'" (citation omitted)). Opining that Bonner "might" have settled or

"seriously considered" Skaggs & Guerra's hypothetical advice and that Bonner's decision

making was based "in part" on Skaggs & Guerra's advice merely speculates as to what

Bonner would have done. *See id.* Similarly, opining on what a reasonably prudent person

would do in Bonner's position is not tantamount to what *Bonner* would have done had

Skaggs & Guerra recommended settlement. *See id.*; *see also Freedom Newspapers of

Tex. v. Cantu*, 168 S.W.3d 847, 858–59 (Tex. 2005) (holding that expert journalist's

12

opinion could not raise a fact issue on whether newspaper acted with actual malice because the expert could not inquire "into the mental state of the defendant"); *see also Connolly v. Smith*, No. 03-03-00575-CV, 2004 WL 1898220, at *5 (Tex. App.—Austin Aug. 26, 2004, pet. denied) (mem. op.) (holding that plaintiff's attorney's affidavit, though "detailed and well supported," was conclusory because it "lack[ed] any basis for his conclusion" that the plaintiff "would have acted differently had he been advised of the consequences of his financial arrangements"). And as discussed, the experts' contentions that Bonner would have settled because he was uninformed or had no "independent knowledge" without Skaggs & Guerra is not supported by the summary judgment record. *See Pollock*, 284 S.W.3d at 817.

Finally, to the extent that the experts opine that based on their "training" and "experience" Bonner would have settled, we note that an expert witness's qualifications or bare opinion alone is not competent summary judgment evidence. *See Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999); *see also Connolly*, 2004 WL 1898220, at *5 (holding that plaintiff's attorney's affidavit was "conclusory and amount[ed] to no evidence at all" because the attorney "relie[d] only on his 'personal experience' to inform his opinion of what [plaintiff] would have done").

Accordingly, we hold that the experts' testimony was conclusory and speculative, and such evidence does not raise a genuine issue of material fact on proximate cause. *See HMC*, 439 S.W.3d at 917; *Pollock*, 284 S.W.3d at 817; *see also Axcess Int'l*, 2016 WL 1162208, at *5 (rejecting expert's affidavit as competent summary judgment evidence because it merely speculated how third party would have acted); *Connolly*, 2004 WL 1898220, at *5.

13

## 2. Claim File Notes & Supporting Documents

The trial court relied in large part on the insurance claim file notes from Bonner's team. The notes indicate that Bonner's team was closely monitoring evidence as it came in and evaluated many different factors when determining a settlement value:

- On December 20, 2016, Mulkey sent an email to the insurance team with updates from Castillo's attorney and attached the police report and Castillo's background check. He stated: "We are following for [Castillo's] medical treatments to review and evaluate . . . ."

- On October 9, 2017, Mulkey updated Bonner and the team on Castillo's medical records. He noted that Castillo had allegedly undergone lumbar surgery but "question[ed] the need for all the treatments he has received."

- On November 2, 2017, Smith reported facts of the accident, concluding that "the police report summary was unfavorable," but there "may[ ]be a small liability factor on claimant driver for inattentiveness and failure to maintain a proper lookout and failure to take evasive actions."

- On January 4, 2018, Bonner, Mulkey, and Smith reviewed the claim file and "the settlement range" of the case. The team again "question[ed] . . . the relationship and need for the surgery given the treatment the plaintiff received before the surgery."

- That same day, Mulkey emailed the team's "file review" to Bonner: "In our discussion today, we have asked for reserves up to $250,000–$275,000.00, . . . but will await our review with the defense counsel before any reserve changes are considered and we will discuss that with you." His email

also stated that "[they] are not considering in [their] evaluation of this claim" the alleged "$600,000 for future lost earnings."

- On January 9, 2018, the team received Castillo's deposition testimony. Smith wrote:

  > [Castillo] appeared to be in no pain, nor distressed, as [he] returned to work from the surgery. . . . Based [on the] updated information[,] our value is in line. The fact [that Castillo] has returned and maintained the job, without difficult[y], d[i]minishes [his] claim and questions the need for the cervical surgery.

- On January 18, 2018, Mulkey reported: "The plaintiff att[orney] still has the same policy limits demand with no change in[ ]their position . . . even though their future loss wage claim of $600,000+ has no meaning . . . as the plaintiff return[ed] to his same job and is making same moneys as before."

- On January 24, 2018, Smith reported on the demeanors of Castillo, Lara, and a defense witness from their depositions. Mulkey reported:

  > The plaintiff attorney see[s] this case is at $350,000.00 and if the plaintiff's future wage loss[es] are supported, this case is a policy limit case. Our evaluat[ion] of the claim is presently between $60,000.00–$90,000.00 and recently as indicated in our prior large loss report, we have increased ou[r] total evaluation of the case, given the medicals we have, the projected surgeries and now the baseball video, surgery is unlikely. . . . The defense attorney previously indicated a settlement range of $300,000–$350,000, but we are evaluating this claim for settlement up to $175,000.00. That is [calculated by subtracting] a 30% contributing [sic] to the loss by the plaintiff with a full claim value of $250,000.00.

- Mulkey reported on February 19, 2018, that Castillo's attorney was "developing a strategy known as the 'Reptile Theory' where they continue to gather information about . . . the 'continued uncaring of the insured and driver' that

15

really is what lead to this loss." He stated that his attorney "made a strong presentation," and that Castillo "comes across well."

- Mulkey reported on March 2, 2018, that "[r]eserves were set at $250,000.00 based upon [their] previous review," even though Skaggs & Guerra valued the case "up to $350,000.00." He stated: "There is always a chance of a higher verdict but unlikely in this venue, where this plaintiff attorney does not normally try the case." Again, he reported to Bonner that "[Skaggs & Guerra] previously indicated a settlement range of $300,000–$350,000, but we are evaluating this claim for settlement up to $175,000.00."

- After a "roundtable" with Skaggs & Guerra on March 9, 2018, Bonner's team reviewed the plaintiff's *Stowers* $750,000 demand and determined that it was "excessive." Skaggs & Guerra evaluated the case at $300,000–350,000, and the team stated it "[m]ay consider up to $300,000." Bonner only authorized up to $250,000 to settle.

The notes clearly show that the insurance team independently refused to consider the $600,000 future wage loss award, concluded that Castillo was contributorily negligent, and believed that Castillo did not appear to be injured. Based on this evidence, we cannot accept Unimex's contention that Bonner did not have independent knowledge of the case and that he would have settled the case had he been advised differently.

Moreover, the claim file notes include instances where the insurance team rejected Skaggs & Guerra's settlement value. Mulkey reported that though Skaggs & Guerra "indicated a settlement range of $300,000–$350,000," the insurance team valued settlement at $175,000 because they concluded that the plaintiff's negligence contributed

16

to the accident. When Castillo issued his $750,000 *Stowers* demand, Bonner authorized only $250,000 in response even though Skaggs & Guerra valued the claim between $300,000–350,000. The notes also show that during trial and when Castillo issued a *Stowers* demand of $915,000, the insurance team reviewed the demand with Skaggs & Guerra and the team increased their valuation to "$300,000–$400,000." Even then, Bonner only authorized $350,000 to settle. As Bonner testified in his deposition, that amount was still "$100,000 more than what [he] thought the case was worth." He explicitly testified that he would not have settled at that point even if Skaggs & Guerra had advised him to because "[he] didn't think the case was worth that kind of money." He also testified that Unimex's general counsel urged the insurance team to settle at trial for $500,000, which he implicitly rejected by authorizing only up to $350,000.

Unimex contends that Bonner only authorized settlement values of $250,000 and $350,000 because Skaggs & Guerra also valued the case at those amounts. However, as indicated above, Bonner on at least one occasion did not follow Skaggs & Guerra's recommendations to offer a higher settlement amount. As a result, this evidence does not show that Bonner would have settled had Skaggs & Guerra hypothetically advised him to settle. Accordingly, such evidence does not raise a genuine issue of material fact on proximate cause. *See* TEX. R. CIV. P. 166a(i).

### 3. Bonner's Declaration

Unimex next argues that the trial court improperly relied on Bonner's declaration because it was conclusory. Specifically, Unimex contends that Bonner's statement that he would not have settled even if advised to do so by Skaggs & Guerra is conclusory

17

because "Bonner does not 'offer specifics' on why the underlying suit 'did not warrant' the settlement amounts demanded by the plaintiff or why those offers were 'too high.'"

Under Texas Rule of Civil Procedure 166a(c), testimony from an expert or interested witness supporting a motion for summary judgment must be clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and readily controvertible. TEX. R. CIV. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). Bonner was certified as an expert witness. However, "not all witnesses who are experts necessarily testify as experts." *Comm'n for Law. Discipline v. Cantu*, 587 S.W.3d 779, 785 (Tex. 2019) (quoting *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851 (Tex. 2011)). Bonner's statement that he would not have accepted Castillo's settlement demands had the lawyers recommended to do so is a statement of fact, not a legal conclusion. *See id.* (differentiating expert testimony and testimony based on "personal knowledge"). Thus, Bonner's statement may be based on his personal knowledge, not his expert opinion, and 166a(c) does not apply. *See id.*; *see also Connolly*, 2004 WL 1898220, at *5–6 (holding that plaintiff-client's affidavit stating that if his lawyer "had advised him regarding the effect of the L.L.C., he would not have authorized its creation" was competent summary judgment evidence because his statement was based on his personal knowledge or experience).

Bonner's statement was based on his personal knowledge. As he explained in his declaration, "[he] evaluated and gave input on strategic decisions" on the claim and had the ultimate authority to settle. Based on his "independent judgment" and review of the claim's "filings and reports," he did not settle because he believed Castillo's settlement offers "were too high." *See Alicea v. Curie Bldg., L.L.C.*, 632 S.W.3d 142, 150 (Tex.

18

App.—El Paso 2021, no pet.) (holding that accountant's affidavit was not conclusory because he testified as to "his personal knowledge of, and professional involvement in, the business transaction"); *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Tr. I*, 331 S.W.3d 500, 512 (Tex. App.—El Paso 2010, no pet.) (holding that custodian of record's "personal knowledge of such records provide[d] adequate factual support for her statements"); *see also Connolly*, 2004 WL 1898220, at *5–6.

Unimex lastly argues that Bonner is an interested witness whose "testimony about what he would have done is subjective, not credible, not readily controvertible and could not support summary judgment." *See* TEX. R. CIV. P. 166a(c). An interested witness is a witness who has a stake in the litigation or a material interest in its outcome. *See Nicholson v. Smith*, 986 S.W.2d 54, 59 (Tex. App.—San Antonio 1999, no pet.); *see, e.g.*, *RRR Farms, Ltd. v. Am. Horse Prot. Ass'n*, 957 S.W.2d 121, 131 (Tex. App.—Houston [14th Dist.] 1997, pet. denied), *holding modified by Baty v. ProTech Ins. Agency*, 63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (finding that witness was "obviously an interested witness" because he was currently employed by the appellee); *Hayes v. E.T.S. Enters., Inc.*, 809 S.W.2d 652, 656 (Tex. App.—Amarillo 1991, writ denied) (same, where the witness was "a party to another suit" the outcome of which would be effected by the current suit); *Martin v. Cloth World of Tex., Inc.*, 692 S.W.2d 134, 135 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (same, where the witness had a pecuniary interest in the outcome of the suit).

Bonner worked for Winter Group, which adjusted USIC's claim. Bonner and Winter Group were never a party to this case, and both were released from liability as part of USIC's settlement agreement. Unimex attempts to create a new rule and claims that

under *Martin*, a witness may be interested if they are merely "associated with either litigant." 692 S.W.2d at 135 ("Unlike most Texas cases involving interested witnesses, the witness in this case was not employed by or associated with either litigant at the time of the summary judgment hearing."). However, the court in *Martin* did not explain what "associated with" means, nor did it hold that the witness was interested in that case because he was merely "associated with" one of the parties. *See id.* at 136 (holding that witness was interested because he had a "pecuniary interest" in the litigation).

Unimex argues nevertheless that Bonner is "associated with" Skaggs & Guerra because they receive "numerous" referrals from Winter Group, Skaggs & Guerra are paid for each referral, and Bonner has worked with Skaggs & Guerra on insurance claims for more than twenty years. Unimex does not argue that Bonner himself would incur some kind of monetary award if Skaggs & Guerra succeeded in this suit. *See id.* at 135–36 (holding that real estate agent had a pecuniary interest in the outcome of the lawsuit because he "would receive an additional commission if" appellee succeeded in the outcome of the suit). We cannot find that Winter Group, simply by making referrals to Skaggs & Guerra, gives Bonner "a pecuniary interest in the outcome of a lawsuit." *See id.* And Unimex cites to no authority that Bonner would be considered an interested witness merely because of some kind of personal working relationship with Skaggs & Guerra. *Cf. id.*; *see also Kolb v. Scarbrough*, No. 01-14-00671-CV, 2015 WL 1408780, at *8 (Tex. App.—Houston [1st Dist.] Mar. 26, 2015, no pet.) (mem. op.) (holding that witness was not an interested witness because there was "no authority for the proposition that" his relationship with the defendant, his neighbor, caused him "to be 'beholden' . . . such that he may be considered an 'interested witness' in his neighbor's litigation").

20

In summary, we reject Unimex's arguments that the summary judgment evidence created a fact issue and that the trial court could not rely on Bonner's declaration. On this record, we conclude that Unimex failed to produce a scintilla of probative evidence to raise a genuine issue of material fact on causation. *See* TEX. R. CIV. P. 166a(i); *Ford Motor Co.*, 135 S.W.3d at 600. Accordingly, we overrule Unimex's first issue.

### III.    FEE FORFEITURE

By Unimex's second issue, it argues that the trial court erred when it found that fee forfeiture was not an available remedy for Unimex's breach of fiduciary duty claim.[6]

Fee forfeiture is a form of equitable relief in breach of fiduciary duty claims. *See Izen v. Laine*, 614 S.W.3d 775, 791 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *Webb v. Crawley*, 590 S.W.3d 570, 587 (Tex. App.—Beaumont 2019, no pet.). It is well-settled that plaintiffs seeking forfeiture of attorney's fees are not entitled to recover fees paid by a third party. *See Gregory v. Porter & Hedges, LLP*, 398 S.W.3d 881, 885 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("A client seeking forfeiture of an attorney's fees is not entitled to recover fees paid by another party, and it is not for this court to change well-settled law."); *Elizondo v. Krist*, 338 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 415 S.W.3d 259 (Tex. 2013)); *Swank v. Cunningham*, 258 S.W.3d 647, 673 (Tex. App.—Eastland 2008, pet. denied); *Liberty Mut. Ins. Co. v. Gardere & Wynne, L.L.P.*, 82 Fed. App'x. 116, 121 (5th Cir. 2003).

---

[6] The resolution of Unimex's first issue is dispositive; however, out of an abundance of caution, we will also address Unimex's second issue.

It is undisputed in this case that USIC paid Skaggs & Guerra's attorney's fees, not Unimex. Thus, Skaggs & Guerra have no fees from Unimex to disgorge. *See Elizondo*, 338 S.W.3d at 25; *Gregory*, 398 S.W.3d at 885.

Unimex argues that the Texas Supreme Court held in *Burrow* "that all compensation received by a disloyal attorney is forfeited to the client regardless of who paid the compensation." *Burrow* held no such thing. *See Burrow*, 997 S.W.2d at 240. In that case, the Court held that a client asserting a breach of fiduciary duty claim against their attorney need not prove actual damages in order to recover forfeiture of attorney's fees. *Id. Burrow* does not stand for the proposition that a plaintiff may recoup attorney's fees paid by a third party. *See id.*; *Gregory*, 398 S.W.3d at 885–86 (rejecting argument that plaintiff client was permitted to seek fee forfeiture of the fees paid by third party); *Liberty Mut. Ins. Co.*, 82 Fed. App'x. at 121 (rejecting appellant's argument that *Burrow* allows client to disgorge attorney's fees paid by a third party). Unimex cites to no authority that contradicts the well-settled rule that a plaintiff-client is not entitled to recover forfeiture of attorneys' fees paid by a third party, and we find none. Accordingly, we overrule Unimex's second issue.

## IV.  CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Delivered and filed on the
10th day of July, 2025.

22